## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

RAYMOND ORTIZ, JR.,

          Plaintiff

   v.

CAROLYN W. COLVIN,

          Defendant

CIVIL ACTION NO. 1:14-CV-01457

(CONNER, C.J.)
(MEHALCHICK, M.J.)

### REPORT AND RECOMMENDATION

This is an action brought under Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. § 405(g), 42 U.S.C. §1383(c)(3)(incorporating 42 U.S.C. § 405(g) by reference), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. This matter has been referred to the undersigned Magistrate Judge for the preparation of a report and recommended disposition pursuant to the provisions of 28 U.S.C. §636(b) and Rule 72(b) of the Federal Rules of Civil Procedure.

For the reasons stated herein, we recommend that the decision of the Commissioner be **AFFIRMED**.

### I.    BACKGROUND & PROCEDURAL HISTORY

Plaintiff worked as a stock clerk until he was terminated from that position on August 30, 2010. Plaintiff admitted that he collected unemployment from October 2011 to December 2011. (Admin. Tr. 105; Doc. 10-2 p. 106). Since the cessation of his unemployment, Plaintiff reported that he relies on his roommate for financial support, and relies on his life partner (not his roommate) for transportation. (Admin. Tr. 106; Doc. 10-2

p. 107). Plaintiff also testified that he has had difficulty finding work due to the commission of a criminal misdemeanor. (Admin. Tr. 37; Doc. 10-2 p. 38).

On December 17, 2010, Plaintiff Raymond Ortiz, Jr., protectively filed applications for DIB and SSI under Titles II and XVI of the Social Security Act. In both applications, Plaintiff alleged that he became disabled beginning September 3, 1999 due to diabetes, high blood pressure, back problems, and ulcers. (Admin. Tr. 293; Doc. 10-6 p. 7). Plaintiff later amended his alleged onset date to March 1, 2012, the date his mental health issues emerged. (Admin. Tr. 78; Doc. 10-2 p. 79). Plaintiff's applications were denied initially on February 4, 2011.

Following this denial, Plaintiff requested that his claims be re-evaluated during an administrative hearing. The requested hearing took place in two installments. The first administrative hearing was held on June 26, 2012, in Harrisburg, Pennsylvania before Administrative Law Judge ("ALJ") Sharon Zanotto. Plaintiff appeared and testified with the assistance of counsel. (Admin. Tr. 95-142; Doc. 10-2 pp. 96-142). Impartial Vocational Expert ("VE") Andrew Caporale also appeared and testified. During this hearing, Plaintiff testified that his uncontrolled blood sugars and the resultant dizziness, fatigue and headaches prevented him from maintaining the concentration and focus required to work, and that his focal deficits were compounded by his ongoing struggle with depression. Plaintiff testified that he feels agitated each time he leaves his residence, has pounding headaches lasting for "a couple" hours at a time every other day that he treats with non-prescription medication, has difficulty sleeping, and gets occasional panic attacks lasting up to fifteen minutes in duration. Plaintiff also reported that he could not sit for more than fifteen minutes at one time, could not stand for more than twenty minutes at one time,

Plaintiff reported that, despite his impairments, he is able to dust and vacuum, cook twice per week, "sometimes" do laundry, visit with friends once per week.

The ALJ continued this hearing to obtain a consultative psychological evaluation at counsel's request.

The second hearing was then delayed for almost a year due to Plaintiff's incarceration. The Court notes that in December 2012, Plaintiff relocated to Lindhurst, New Jersey. On March 4, 2013, Plaintiff appeared and testified before ALJ Zanotto with the assistance of counsel. (Admin. Tr. 32-78; Doc. 10-2 pp. 33-79). Impartial VE Sheryl Bustin also appeared and testified. During this hearing, Plaintiff reported that he was unable to find work because no employer could accommodate all of his restrictions. Plaintiff asserted that, in order to work, he would need extra work breaks to check his blood sugar levels one hour before *and* one hour after each meal. A blood sugar log, however, reflects that in practice Plaintiff only checked his blood sugar three times per day (before each meal). (Admin. Tr. 435; Doc. 10-7 p. 58). Plaintiff also testified that he could: stand up to ten minutes at one time; walk for up to ten minutes at one time; no sit in a non-reclining chair without back pain; not maintain focus. Plaintiff reported that on one occasion he "cursed out" a supervisor but was never reprimanded, and was charged with simple assault after a domestic dispute with his life partner – the charge was later reduced to harassment.[1] Plaintiff reported that he was prescribed anti-depressants in March 2012 after an unsuccessful suicide attempt.

After his second Administrative hearing, the ALJ denied Plaintiff's claims in a written decision dated March 14, 2013.

---

[1] Plaintiff testified that he had been treating with a counselor at TW Ponessa between August 2012 and November 2012, twice per week. (Admin. Tr. 63; Doc. 10-2 p. 64). Plaintiff stated that he did not receive any other treatment for his depression during the relevant period, but was on a waiting list to receive similar services in New Jersey.

Plaintiff sought review of the ALJ's decision denying his claims by the Appeals Council. Plaintiff's request for review was denied on March 29, 2014, and notice was sent to Plaintiff's New Jersey address. Sometime thereafter Plaintiff was, once again, incarcerated in Dauphin County prison – located in the Middle District of Pennsylvania. (See Doc. 2) (stating that Plaintiff was incarcerated at Dauphin County Prison as of June 19, 2014). While incarcerated, Plaintiff initiated this action by filing a complaint on July 28, 2014. (Doc. 1). In his Complaint, Plaintiff asserts that the denial of his claims was based on a flawed application the law, and is not supported by substantial evidence. He requests that this Court reverse the decision of the Commissioner and enter an order awarding benefits, or in the alternative, remand this case for a new administrative hearing. On October 31, 2014, the Commissioner filed her Answer, in which she contends that the ALJ's decision is in accordance with the law and regulations and is supported by substantial evidence. (Doc. 9). Together with her answer, the Commissioner filed a complete copy of the administrative record. (Doc. 10).

Having been fully briefed by the parties, this appeal is ripe for resolution. (Doc. 11, Doc. 12, Doc. 13).

## II.   STANDARD OF REVIEW

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators – the ALJ and this court. At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits.

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any

4

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §404.1505(a) and 20 C.F.R. §416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. §404.1505(a); 20 C.F.R. § 416.905(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a); 20 C.F.R. §416.920(a). Under this framework, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §404.1520; 20 C.F.R. §416.920. Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. §404.1545(a)(1); 20 C.F.R. §416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §404.1545(a)(2); 20 C.F.R. §416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. § 423(d)(5); *see also* 42 U.S.C. §1382c(a)(3)(H)(i)(incorporating the provisions of 42 U.S.C. § 423(d)(5) by reference); 20 C.F.R. §404.1512; 20 C.F.R. §416.912; *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); 20 C.F.R. §416.912(f); *Mason*, 994 F.2d at 1064.

Once a final decision is issued by the Commissioner, and that decision is appealed to this Court, our review of the Commissioner's final decision is limited to determining whether the findings of the final decision maker – the ALJ in this case – are supported by substantial evidence in the record, as it was developed before that decision maker. *See* 42 U.S.C. § 405(g)(sentence five)(incorporated by 42 U.S.C. §1383(c)(3)); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200(3d Cir. 2008); *Ficca v. Astrue*, 901 F.Supp.2d 533, 536(M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason,* 994 F.2d at 1064. In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two

inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D.Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); *Burton v. Schweiker*, 512 F.Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of review on legal matters is plenary); *Ficca*, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

## III.  THE ALJ'S DECISION

In her decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through March 31, 2014, and proceeded through each step of the five step sequential evaluation process. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between his alleged onset date, March 1, 2012, and the date of her decision, March 14, 2013. (Admin. Tr. 15; Doc. 10-2 p. 16). At step two, the ALJ found that Plaintiff had the medically determinable severe impairments of diabetes, obesity, and dysthymic disorder. (Admin. Tr. 15-16; Doc. 10-2 pp. 16-17). The ALJ found that Plaintiff's alleged impairments of back pain, lower extremity pain, hypertension,

headaches, and hearing loss were medically determinable but non-severe. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (Admin. Tr. 16-17; Doc. 10-2 pp. 17-18).

Between steps three and four, the ALJ evaluated Plaintiff's RFC. After considering the entire record, the ALJ found that Plaintiff retained the RFC to perform medium work as defined in 20 C.F.R. §404.1567(c) and 20 C.F.R. §416.967(c), except that Plaintiff is "limited to occasional squatting, kneeling, stooping, crouching, balancing, climbing and ramps/stairs and occasional interaction with supervisors, coworkers and the public." (Admin. Tr. 17-23; Doc. 10-2 pp. 18-24). In making this finding, the ALJ was required to consider all of Plaintiff's subjective testimony in accordance with the requirements of 20 C.F.R. §404.1529, 20 C.F.R. §416.929 and SSRs 96-4p and 96-7p. The ALJ was also required to consider the medical and other opinion evidence in accordance with the requirements of 20 C.F.R. §404.1527, 20 C.F.R. §416.927, and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

The record in this case includes opinions from two sources – a nontreating psychiatrist who examined Plaintiff on only one occasion, (Admin. Tr. 618-26; Doc. 10-10 pp. 16-24), and a treating Licensed Practical Nurse (a non-acceptable medical source). (Admin. Tr. 851-59; Doc. 10-14 pp. 49-57).

On November 18, 2012, Psychiatrist Brett Digiovanna, M.D., examined Plaintiff. Dr. Digiovanna diagnosed Plaintiff with Dysthymic Disorder and a history of reading disorder, and the "rule out" diagnoses of major depressive episode and alcohol abuse. (Admin. Tr. 625; Doc. 10-10 p. 23). He also noted that Plaintiff had "probable" post-

traumatic stress disorder, and underlying borderline and avoidant personality features. *Id.* These diagnoses were based on Dr. Digiovanna's observations during a single examination. On the mental status exam, Dr. Digiovanna noted that, though he was alert and oriented, Plaintiff's affect was "congruent and irritable." Admin. Tr. 624; Doc. 10-10 p. 22). After completing several cognitive exercises to assess Plaintiff's memory and thought processes, Dr. Digiovanna assessed that Plaintiff's judgment and insight were poor, but not psychotically impaired. *Id.* Dr. Digiovanna opined that Plaintiff's overall prognosis was poor, and noted that Plaintiff had "significant impairment in his ability to coherently relate with people in a non-violent, non-aggressive, non-hostile way," and has "some difficulties with his pace and persistence, likely secondary to concentration deficits dye to anxiety or depression." (Admin. Tr. 625-26; Doc. 10-10 pp. 23-24). Dr. Digiovanna clarified his prognosis in a medical source statement, wherein he opined that Plaintiff had: marked difficulties interacting with the public, supervisors, and co-workers, and responding appropriately to work pressures and changes; moderate difficulties understanding and carrying out detailed instructions; and, slight difficulties making judgments on simple work-related decisions. (Admin. Tr. 618-20; Doc. 10-10 pp. 16-18).

On February 27, 2013, Licensed Practical Nurse ("LPN") Karen Kattwinkel completed a physical RFC questionnaire. LPN Kattwinkel noted that she examined Plaintiff monthly, and her treatment notes begin in December 2012. (Admin. Tr. 851-55; Doc. 10-14 pp. 49-53). LPN Kattwinkel noted that Plaintiff's symptoms include elevated blood sugar, fatigue, blurred vision, and foot pain (from neuropathy). *Id.* LPN Kattwinkel also reported that Plaintiff suffered from depression and anxiety and was incapable of tolerating even a low stress job because he cannot tolerate crowds. *Id.* LPN Kattwinkel also opined that

Plaintiff: could walk up to half a block without stopping; sit up to five minutes at one time, and for a total of less than two hours per eight-hour workday; could stand up to five minutes at one time, and for a total of less than two hours per eight-hour workday; needed to include two minute periods to walk around every five minutes throughout an eight-hour workday; needed to take an unscheduled break every five minutes during an eight-hour workday; needed to elevate his legs ten inches above the floor with prolonged sitting; could never lift any weight above ten pounds and rarely lift less than ten pounds; could occasionally look down, turn his head left or right, look up, and hold his head in a static position; and, could rarely twist or climb stairs; could never stoop, crouch, or climb ladders. *Id.* LPN Kattwinkel also noted that Plaintiff had significant reaching, handling, and fingering limitations due to neuropathy, and would be capable of using his hands to grasp, turn or twist objects, perform tasks requiring fine manipulation, or reach overhead for only two percent of the eight hour workday. *Id.* In an evaluation completed for the New Jersey Division of Family Development in the same month, LPN Kattwinkel noted that Plaintiff was unable to work for twelve months or more due to his diagnosed conditions of uncontrolled diabetes, hyperlipidemia, and depression. (Admin. Tr. 858-59; Doc. 10-14 pp. 56-57).

The ALJ concluded at step four that Plaintiff is unable to perform his past relevant work. (Admin. Tr. 23; Doc. 10-2 p. 24). During the supplemental hearing, the VE testified that, considering Plaintiff's age, education, work experience, and RFC, Plaintiff would be able to perform other work that existed in the national economy. (Admin. Tr. 82-83; Doc. 10-2 pp. 83-84). The VE then identified that Plaintiff could perform the representative occupations of: cleaner, housekeeper (DOT 323.687-014) with one million positions nation-wide, 35,000 positions state-wide, and 800 positions in the local economy; bakery worker,

conveyor line (DOT 524.687-022) with 800,000 positions nation-wide, 11,000 positions state-wide, and 400 positions in the local economy; and machine tender (DOT 569.686-046) with 300,000 positions nation-wide, 18,000 positions state-wide, and 200 positions in the local economy. (Admin. Tr. 80-83; Doc. 10-2 pp. 81-84). Based on this testimony, the ALJ concluded that the Plaintiff could perform other work that existed in significant numbers in the national economy and entered a decision that Plaintiff was not disabled. (Admin. Tr. 24; Doc. 10-2 p. 24).

## IV.   ANALYSIS

### A. MEDICAL OPINION EVIDENCE

The Social Security Regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including … symptoms, diagnosis and prognosis, what [the claimant] can still do despite [his or her] impairment(s), and … physical or mental restrictions." 20 C.F.R. §404.1527(a)(2); 20 C.F.R. §416.927(a)(2). The Social Security Regulations define "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R §404.1513; 20 C.F.R. §416.913.

It is clearly within the ALJ's authority to choose whom to credit when the record contains conflicting medical opinions. *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). However, it is apparent that the ALJ "cannot reject evidence for no reason or the wrong reason." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)(*citing Mason*, 994 F.2d at 1066). The ALJ is also required to provide an explanation as to why opinion evidence by acceptable medical sources has been rejected so that a reviewing court can determine

whether the reasons for rejection were proper. *Cotter v. Harris*, 642 F.2d 700, 704, 707 (3d Cir. 1981).

The Social Security Rulings and Regulations provide a framework under which medical opinion evidence must be considered. At the outset, the Court notes that the Social Security Regulations discuss the nature of an acceptable medical source's treatment relationship with the claimant in terms of three broad categories: treating; examining; and non-examining.[2] The Social Security Regulations also express a clear preference for opinions by treating sources. *See Morales*, 225 F.3d at 317 ("a cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation over a prolonged period of time."). Pursuant to 20 C.F.R. §404.1527(c)(2) and 20 C.F.R. §416.927(c)(2):

> if [the ALJ] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight.

*Id.*; *see also* SSR 96-2p, 1996 WL 374188. Furthermore, finding that the medical opinion of a treating source is not entitled to controlling weight does not mean the opinion should be rejected. SSR 96-2p, 1996 WL 374188, at *1. In many cases, a treating source's medical opinion will be entitled to great deference even where it is found to be non-controlling. *Id.*

---

[2] A treating source is defined as an acceptable medical source who provides or has provided a claimant with medical treatment or evaluation, and who has or had an ongoing treatment relationship with the claimant. 20 C.F.R. §404.1502; 20 C.F.R. §416.902. A nontreating source is defined as an acceptable medical source that has examined the claimant but did not have an ongoing treatment relationship – like a consultative examiner. *Id.* A nonexamining source is defined as an acceptable medical source that has not examined the claimant, but has provided an opinion in the case – like a state agency reviewing doctor. *Id.*

Where the ALJ finds that no treating source opinion is entitled to controlling weight, the regulations provide that the weight of all non-controlling opinions by treating, examining, and non-examining medical sources should be evaluated based on the following factors: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. §404.1527(c); 20 C.F.R. §416.927(c). In addition, the ALJ should consider any other factors that tend to support or contradict the opinion that were brought to his or her attention. 20 C.F.R. §404.1527(c)(6); 20 C.F.R. § 416.927(c)(6).

Additionally, the ALJ must consider and should explain the weight accorded to opinions by medical professionals who are not "acceptable medical sources" – such as physicians' assistants or certified nurse practitioners – and non-medical sources, including opinions by a claimant's friend, neighbor, or family member. *See* 20 C.F.R. §§ 404.1512, 404.1513(d); 20 C.F.R. §§416.912, 416.913(d); SSR 06-03p, 2006 WL 2329939, at *6. These opinions are weighed using the same factors as medical opinions. SSR 06-03p, 2006 WL 2329939, at 4. However, unlike opinions by acceptable medical sources, opinions by other medical sources and non-medical sources cannot establish the existence of impairment. *Id.* at *2. Instead, medical and non-medical opinions by sources who are not considered to be acceptable medical sources under the Social Security Regulations – like the one offered by Plaintiff's husband – may be used as a benchmark assess the credibility of a claimant's testimony about the intensity, persistence, and limiting effects of his or her impairments or in evaluating the weight of opinions by "acceptable medical sources." *Id.* at *4 ("SSA's regulations include a provision that requires adjudicators to consider any other factors

brought to our attention …opinions, from 'other sources' – both medical sources and 'non-medical sources' – can be important in this regard.").

Here, Plaintiff asserts that the ALJ's decision is not supported by substantial evidence because she failed to accord sufficient weight to the medical opinions of a consulting psychiatrist, Dr. Brett Digiovanna, and treating LPN Karen Kattwinkel. The Commissioner disagrees, and asserts that the ALJ properly discounted each opinion, and that her decision to do so is supported by substantial evidence.

     1.     The ALJ's Evaluation of Dr. Digiovanna's Report is supported by Substantial Evidence

In her decision, the ALJ gave "little" weight to Dr. Digiovanna's conclusions that Plaintiff suffered from a substantial loss of ability to perform competitive substantial gainful activity. The ALJ explained that:

> Dr. Digiovanna relied heavily on the claimant's subjective statements and self-reported history, which the undersigned finds not entirely credible as there is no objective evidence substantiating his complaints. There is no evidence showing the claimant was unable to relate appropriately during office visits or evaluations. The claimant has friends and has made trips to New York to visit family. He testified to only a couple instances of conflicts at work, resulting in write-ups not firing. Dr. Digiovanna relied on the claimant's statements of poor response to treatment and alleged suicide attempts. However, there is no evidence of treatment for suicide attempts, therapy or poor response to medication.

(Admin. Tr. 22; Doc. 10-2 p. 23).

Plaintiff argues that "the reasoning given for rejecting Dr. Digiovanna's opinion is inadequate and vague" and contends that Dr. Digiovanna's opinion is well-supported by his examination findings and is consistent with the medical evidence of record. (Doc. 11 p. 14; Doc. 13 pp. 3-5). In response, the Commissioner asserts that the ALJ's stated rationale for discounting Dr. Digiovanna's opinion was adequate, and was in accordance with the Social

Security regulations governing the assessment of medical opinion evidence. (Doc. 12 pp. 17-19).

SSR 96-7p provides that "the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether an individual is disabled depends on the credibility of those statements." 1996 WL 374186 at*4. Moreover, "[a]n ALJ may discredit a physician's opinion on disability that was premised largely on the claimant's own accounts of [his or] her symptoms when the claimant's complaints are properly discounted." *Morris v. Barnhart*, 78 Fed. Appx. 820, 825 (3d Cir. 2003)(*citing Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)). Here, the ALJ found that Plaintiff was "less than credible" and similarly accorded "little" weight to Dr. Digiovanna's because it was premised on Plaintiff's self-reported medical history and subjective complaints, which the ALJ had already properly discounted. Accordingly, the Court finds that the ALJ's stated rationale for discounting Dr. Digiovanna's medical opinion is in accordance with the Administrative rulings and regulations governing the assessment of opinion evidence.

With respect to Plaintiff's contention that the ALJ's explanation of his rationale to discount Dr. Digiovanna's opinion was "vague," the Court disagrees. When medical testimony or conclusions are conflicting, the ALJ is not only entitled but required to choose between them. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). Further, since it is apparent that an ALJ cannot reject evidence for no reason or for the wrong reasons, *Plummer, 186 F.3d at 429*, it follows naturally that an ALJ's decision to reject or discount such evidence must be accompanied by a "clear and satisfactory explication of the basis on which it rests," in order to facilitate judicial review. *Cotter,* 642 F.2d at 704-05. Here, the ALJ's rationale for discounting this opinion is clearly articulated, and is supported by substantial evidence.

Specifically, the ALJ accurately notes that there is little evidence in the record that Plaintiff has such extreme limitations in social functioning. Though Plaintiff reported having altercations with co-workers and his supervisor he admitted that only one altercation was ever reported and did not result in any disciplinary action, (Admin. Tr. 53-54; Doc. 10-2 p. 54-55), and testified that he has friends who he socializes with on a fairly regular basis. (Admin. Tr. 76, 119; Doc. 10-2 pp. 77, 120). Further, there is no evidence that Plaintiff was ever hospitalized for a suicide attempt or for psychiatric treatment.

> ### 2.      The ALJ's Evaluation of LPN Karen Kattwinkel's Opinion is Supported by Substantial Evidence

In her decision, the ALJ found that LPN Kattwinkel's opinion that Plaintiff was incapable of performing any work was not persuasive in light of the other evidence of record. The ALJ explained that:

> Ms. Kaltwinkel [sic] is a non-acceptable medical source who has only seen the claimant since December 2012. The limited treatment records from her show mostly subjective complaint and few objective clinical findings. She completed one of these forms for welfare-public assistance, which has different program standards. The other medical evidence in this case does not show objective clinical findings or a level of care consistent with the extent of limitation alleged by the claimant or implied in these opinions. The records do not show serious complications or end organ damage related to diabetes or hypertension, persistent symptoms related to diabetes or medications, frequent headaches, objective findings of treatment indicative of serious psychiatric impairment, spinal or lower extremity pathology, gait disturbance, serious sensory or reflex deficits or motor loss.

(Admin. Tr. 21-22; Doc. 10-2 pp. 22-23).

Plaintiff alleges that the ALJ erred in failing to state exactly how much weight he accorded to LPN Kattwinkel's medical source statement, and that this case must be remanded so that the weight given to this opinion can be determined. (Doc. 11 p 17; Doc. 13 p. 7). While the Court agrees that the Social Security regulations mandate that the ALJ

16

*consider* all evidence in the case record when making a determination, *see* 20 C.F.R. §404.1520(a)(3) and 20 C.F.R. §416.920(a)(3), the Social Security ruling guiding the consideration of opinion evidence from "other" medical sources who are not "acceptable medical sources," provides that "the adjudicator generally *should* explain the weight given to opinions from these 'other' sources,' *or otherwise ensure that the discussion of the evidence in the determination or decision allows a … subsequent reviewer to follow the adjudicator's reasoning …*" SSR 06-3p, 2006 WL 2329939 at*6 (*emphasis added*).

Here, the ALJ's discussion of LPN Kattwinkel's statement is sufficient to allow this Court to follow the ALJ's reasoning – that she was not persuaded by LPN Kattwinkel's assessment because it is not supported by the medical evidence of record and is not consistent with the level of care provided. Further, we find that the ALJ's evaluation of this opinion is supported by substantial evidence. Office treatment notes generated while Plaintiff was under LPN Kattwinkel's care reflect that Plaintiff: ambulated easily and had a normal gait and good strength in all extremities; reported being physically active and exercising; had no thoughts to hurt himself or others; and exhibited no tenderness or decrease in range of motion in his spine. (Admin. Tr. 808-49; Doc. 10-14 pp. 6-47). Further, there were no signs of serious organ damage in an April 2011 workup of Plaintiff's stomach and kidneys. (Admin. Tr. 538-45; Doc. 10-9 pp. 29-36). A June 2012 occupational therapy evaluation revealed that Plaintiff's range of motion in both upper extremities was within full limits. (Admin. Tr. 781-82; Doc. 10-13 pp. 55-56). The same report revealed that despite the appearance that Plaintiff did not give full effort for manual muscle and dynamometer testing, measurements show that he retained approximately 50 pounds of grip strength in

each hand. *Id.* The occupational therapist also noted that Plaintiff's complaints were inconsistent with the tests where he exhibited difficulty during the examination. *Id.*

### B. CREDIBILITY ASSESSMENT AND ALLEGED ALJ BIAS

Plaintiff contends that he was denied due process at his hearing as a result of the ALJ's "biased personal musings" which illustrate that the ALJ had a "personal vendetta to deny benefits to those claimants who have medical conditions similar to her own." (Doc. 11 p. 11; Doc. 13 pp. 1-2). In addition to his claims of ALJ bias, the Plaintiff also asserts that the ALJ improperly assessed the credibility of Plaintiff's testimony. (Doc. 11 pp. 17-19). Because both of these arguments arise out of the ALJ's assessment of the credibility of Plaintiff's statements concerning the intensity, persistence, and limiting effects of his impairments, the Court will discuss these arguments together.

In her decision, the ALJ found Plaintiff's testimony to be less than fully credible, in part because:

> The claimant alleges that he is not able to afford test syringes and test strips, but the medical records reflect his treating sources made referrals to social workers and nutritionists to assist with no evidence that he ever followed through. The claimant testified that he requires breaks to check blood sugars one hour before and after meals. However, logs contained in the record do not show that he does this. **Though not a medical doctor, based on personal experience as a diabetic, the undersigned found his testimony concerning testing and diet somewhat inconsistent with typical diabetic recommendations as generally testing is required just before eating and two hours thereafter.** In any case, the record does not show that the claimant's poorly controlled diabetes has resulted in end organ damage, serious complications or persistent symptoms that he alleges…The undersigned finds no persuasive evidence to support absences or breaks as alleged.

(Admin. Tr. 22; Doc. 10-2 p. 23)(emphasis added). Plaintiff's bias claim arises from the ALJ's reference to her own personal experience with diabetes. With respect to his contention that the ALJ improperly evaluated his credibility, Plaintiff asserts that the ALJ

improperly inferred that Plaintiff's diabetes was less severe than alleged due to his failure to seek or pursue regular medical care, and because the ALJ improperly opined that Plaintiff's ability to accomplish basic household chores demonstrated that he could engage in full time work. The Court will begin with Plaintiff's allegations of ALJ bias.

    1.  <u>ALJ Bias</u>

The Third Circuit has held that claimants are entitled to have evidence evaluated by an unbiased adjudicator. The Social Security regulations provide that an ALJ shall not conduct a hearing if "he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision." 20 C.F.R. §404.940; 20 C.F.R. §416.1440. Administrative hearing officers, like the ALJ in this case, are afforded a presumption of impartiality. *Schweiker v. McClure*, 456 U.S. 188, 195 (1982). This presumption can be rebutted by "a showing of conflict of interest or some other specific reason for disqualification," made by the party making the assertion. *Id.* In *Litkey v. United States,* the Supreme Court described the analysis to determine whether a judge was biased, and concluded that a bias challenge is supported if (1) the judge had formed an opinion of the case based on facts introduced or events occurring outside of the proceedings or of prior proceedings, *or* (2) if the judge displayed an attitude towards the plaintiff so extreme as to "make fair judgment impossible." 510 U.S. 540, 555 (1994); *see* e.g. *Ventura v. Shalala*, 55 F.3d 900, 902-04 (3d Cir. 1995)(remanding to a different ALJ where the ALJ acted with extreme impatience, hostility, and condescension towards the claimant and his representative during the hearing).

Plaintiff compares the ALJ's discussion of her own observations of "typical diabetic recommendations" to the facts of *Rosa v. Bowen*, where the New Jersey District Court

vacated an ALJ's decision and remanded the case for a new hearing with a different ALJ because the Court's review of the Administrative transcript revealed that the claimant's hearing "was shameful in its atmosphere of alternating indifference, personal musings, impatience, and condescension." 677 F.Supp. 782, 783 (D.N.J. 1988). Specifically, in *Rosa*, the Court found that the presumption of ALJ impartiality was rebutted where – in addition to measuring the gravity of the claimant's condition against his own mother's illness and giving advice to the claimant about the proper medication for and diagnosis of her illness – the ALJ summarily denied the claimant's requests to further develop the record, denied the claimant's counsel the opportunity to make opening or closing statements in person, imposed unreasonable time constraints on the claimant's counsel, harassed and antagonized the claimant's counsel to accelerate his presentation, and turned the hearing into a "cheap bargaining session" by offering to find the claimant disabled in exchange for amending her alleged onset date. *Id.* at 784.

To the extent that Plaintiff asserts that he has adequately rebutted the presumption of ALJ impartiality by proffering one sentence in the ALJ's decision, the Court disagrees. Here, the Plaintiff was thoroughly questioned about the nature and extent of his impairments during two administrative hearings, and Plaintiff's representative was allowed the same opportunity to do so without imposing any unreasonable time constraints; and the ALJ entertained Plaintiff's eleventh-hour request for a consultative examination after determining that further development of the record was required. The record is devoid of any evidence of any attitude by the ALJ that rendered fair judgment impossible. Moreover, despite the ALJ's unfortunate decision to insert observations gleaned from her own experience when assessing the credibility of Plaintiff's testimony, she ultimately relied on

inconsistencies between Plaintiff's testimony, his blood sugar log, and treatment notes documenting a history of treatment non-compliance to discount Plaintiff's testimony that his diabetes was uncontrolled, despite his continued compliance with medical treatment recommendations. It is clear that the ALJ's opinion was based on the objective evidence developed during the course of the proceedings. Therefore, despite the fact that the Court finds that the ALJ's decision to insert her own personal experience with diabetes into the administrative decision-making process was ill-advised and should be discouraged, the Court also finds that Plaintiff has failed to rebut the presumption of ALJ impartiality. Moreover, even if Plaintiff had not failed to overcome the presumption of impartiality, because the ALJ's decision was properly grounded in the medical evidence of record, rather than the ALJ's personal musings, this error would, at most, be harmless.

     2.   <u>Credibility Assessment</u>

Plaintiff alleges that the ALJ improperly discounted Plaintiff's testimony based on inferences drawn from Plaintiff's failure to seek medical treatment without considering Plaintiff's explanation for his failure to do so.

SSR 96-7p provides that, a claimant's statements

> may be less credible if the level of or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment prescribed and there are no good reasons. However, the adjudicator must not draw any inferences without first considering any explanation that the individual may provide, *or other information in the case record*, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to recontact the individual or question the individual at the Administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner. The explanations provided may provide insight into the individual's credibility.

1996 WL 374186, at *7 (*emphasis added*). The Court finds that Plaintiff's argument lacks merit. As Plaintiff points out, the record does contain evidence that he did not pursue regular treatment due to a lack of health insurance and could not always afford necessary medical supplies. On June 8, 2012, Plaintiff reported that he ran out of syringes for insulin use, and all of his medications. (Admin. Tr. 511; Doc. 10-9 p. 2). Dr. Rier referred Plaintiff to social services at the Hamilton Health Plaza, and attempted to contact the diabetes nurse to see if there were any free syringes available. (Admin. Tr. 512; Doc. 10-9 p. 3). At the hearing, however, Plaintiff testified that he had no difficulty obtaining syringes. (Admin. Tr. 50; Doc. 10-2 p. 51). Instead, he reported that he was unable to afford test strips, and reported that although he was referred to a social worker, the social worker never contacted him. *Id.* Plaintiff testified that he followed up with his doctor about his inability to afford test strips. *Id.* There is no record of any subsequent complaints to Dr. Rier or any other medical provider regarding an inability to afford syringes, test strips, or any diabetes medication.

### C. HYPERTENSION AND OBESITY

Plaintiff asserts that the ALJ failed to give "strong" consideration to Plaintiff's medically determinable severe impairment of obesity throughout the disability determination. (Doc. 11 pp. 19-20; Doc. 13 pp. 9-10). In support of his argument, he relies on *Rutherford v. Barnhart*, in which the Third Circuit, while recognizing that a claimant's obesity should be considered throughout the disability determination, found that remand was not required for the consideration of obesity where it would not affect the outcome of the case. 399 F.3d 546, 552-53 (3d Cir. 2005). In *Rutherford*, the Court reasoned that a claimant's bare assertion that her weight made it more difficult to stand, walk, and

manipulate her hands and fingers was not enough to require remand when the ALJ clearly relied on the medical evidence as a basis for his findings. *Id.*

Like in *Rutherford*, Plaintiff fails to specify how his obesity would affect the five-step analysis undertaken by the ALJ. Instead, Plaintiff merely alleges his obesity compounds the sleep difficulties caused by his mental impairments. Moreover, the ALJ in this case considered and discussed Plaintiff's obesity at steps two and three of the sequential evaluation process, and in his RFC assessment. At step two, the ALJ found that Plaintiff's impairment due to obesity was medically determinable and severe. (Admin. Tr. 15-16; Doc. 10-2 pp. 16-17). At step three, the ALJ correctly noted that while there was no specific listing for obesity she is required to evaluate any functional impairment resulting from Plaintiff's obesity under any applicable listing for other body systems, *see* SSR 02-1p, 2002 WL 34686281, and found that there was no objective medical evidence showing that Plaintiff's obesity increased the severity of any of Plaintiff's coexisting impairments. (Admin. Tr. 16; Doc. 10-2 p. 17). Last, in his RFC assessment, the ALJ noted that Plaintiff testified that he is 5'7" tall and weighs 200 pounds, (Admin. Tr. 18; Doc. 10-2 pp. 19), and relied heavily on the objective medical evidence supplied by Plaintiff's treating sources, who were aware of Plaintiff's obesity and did not report any clinical abnormalities exacerbated by his weight. Accordingly, the Court finds that the ALJ properly evaluated Plaintiff's obesity.

Next, Plaintiff contends that the ALJ failed to adequately explain her rationale for finding Plaintiff's hypertension to be medically determinable but non-severe. (Doc. 11 p. 20). Plaintiff generally alleges that "hypertension is a severe impairment when a person has diabetes as it could be the reason for headaches and can also contribute to heart disease and

other complications." *Id.*  In response the Commissioner asserts that any error by the ALJ in finding Plaintiff's hypertension to be medically determinable but non-severe is harmless. (Doc. 12 pp. 25-26). The Court agrees, and finds any error by the ALJ in finding Plaintiff's hypertension to be non-severe is harmless.

In determining a claimant's RFC, all of the claimant's impairments, including those not considered "severe" must be considered. 20 C.F.R. §404.1545(a)(2); 20 C.F.R. §416.945(a)(2). Thus, where, as here, "the Commissioner finds at least one of a claimant's impairments to be severe and adequately incorporates any limitations resulting from both severe and non-severe impairments into his RFC assessment, the specific determinations at the second set concerning non severe impairments are of no dispositive significance." *Schuster v. Astrue*, 879 F.Supp.2d 461, 470 (E.D.Pa. 2012)(*quoting Lambert v. Astrue*, No. 08-657, 2009 WL 425603, at*13 (W.D.Pa. Feb. 19, 2009)). Here, the ALJ properly evaluated and explained her consideration of the limiting effects of the headaches that Plaintiff alleges result from his non-severe impairment of hypertension in her RFC assessment. (*See* Admin. Tr. 16; Doc. 10-2 p. 17)("The record shows treatment for … hypertension … however, as discussed further below the undersigned finds these are nonsevere. Nonetheless, the undersigned considered all of the claimant's impairments, including those nonsevere, when determining residual functional capacity."). Moreover, the Court finds that the ALJ's assessment that there is no evidence of persistent complaints, significant findings, or a degree of treatment indicative of headaches that would preclude work is supported by substantial evidence. The record reflects that Plaintiff complained of headaches once in August 2010, but a CT of Plaintiff's head was normal and he did not return with complaints of sufficient persistency or severity to warrant further workup. (Admin. Tr. 596-601; Doc.

10-9 pp. 86-92). Plaintiff was instructed to take Tylenol. *Id.* In December 2012, Plaintiff complained of experiencing headaches over a five month period. (Admin. Tr. 805-09; Doc. 10-14 pp. 3-7). The accompanying treatment notes, however, do not discuss the severity, frequency or limiting effects of these headaches, and, once again, no further workup was recommended.

## V.   RECOMMENDATION

Based on the foregoing, it is recommended that the Court enter judgment in favor of the Commissioner and against Plaintiff Raymond Ortiz, Jr. Specifically, it is recommended that the Court:

1. **AFFIRM** the final decision of the Commissioner of Social Security;

2. **DENY** Mr. Ortiz's request for an order awarding benefits; and,

3. **DENY** Mr. Ortiz's request for a new Administrative hearing.

**Dated: July 31, 2015**                                              *s/ Karoline Mehalchick*
                                                         **KAROLINE MEHALCHICK**
                                                         **United States Magistrate Judge**

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAYMOND ORTIZ, JR., | |
| Plaintiff | CIVIL ACTION NO. 1:14-CV-01457 |
| v. | (CONNER, C.J.)<br>(MEHALCHICK, M.J.) |
| CAROLYN W. COLVIN, | |
| Defendant | |

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **July 31, 2015**.

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**Dated: July 31, 2015**

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**